BENJAMIN A. VAN ETTEN and LOUISE H. VAN ETTEN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Etten v. Commissioner
Docket No. 8866-74.
United States Tax Court
T.C. Memo 1977-400; 1977 Tax Ct. Memo LEXIS 41; 36 T.C.M. (CCH) 1620; T.C.M. (RIA) 770400; November 17, 1977, Filed *41 Benjamin A. Van Etten, pro se. Thomas N. Tomashek, for the respondent. FAY
MEMORANDUM FINDINGS OF FACT AND OPINION FAY, Judge: Respondent determined deficiencies in petitioners' income tax for the years and in the amounts that follow: Year
Amount
1971
$5,701
1972
5,864
Concessions having been made, [1] we are to decide whether the loss sustained by Highland Development Company and claimed by petitioners on their 1972 Federal income tax return should be disallowed. Resolution of this question requires us to first determine whether Highland Development Company's election to be treated as a small business corporation had terminated under section 1372(e)(5) [2] in 1972. FINDINGS OF FACT Some of the facts have been stipulated and are so found.
At the time of filing the petition herein, Benjamin A. and Louise Van Etten resided in Bellevue, Washington. They filed joint Federal income tax returns for 1971 and 1972 with the Internal Revenue Service *42 Center in Ogden, Utah. The couple divorced in 1973. Throughout 1972, petitioner Benjamin A. Van Etten was the sole stockholder in Highland Development Company (Highland). Prior to 1972, Highland was a qualified small business corporation under the provisions of subchapter S of the Code. Its primary business involved the purchase, subdivision, and sale of tracts of land to be used as single-family building sites. In a merger with B & L Corporation [3] in 1970, Highland acquired two residences known as the Emerald Valley and Sherrick houses. During 1972 the Sherrick house was leased by Highland for $1,925. Highland as lessor also entered into an agreement with Jack W. and Marjorie C. Garn on August 1, 1971, for the rental of the Emerald Valley house. In the latter transaction, a printed "Earnest Money Receipt and Agreement" form was used, but it was altered to read "Rent & Earnest Money Receipt and Agreement with Option to Purchase." The agreement recited that Highland had received the sum of $650 from the Garns and went on to provide in part as follows: Purchaser agrees to lease said dwelling for a period of one *43 year at a rental price of $250.00 per month. Said year to start Aug. 1, 1971 and end Aug. 1, 1972. Purchaser has paid down $250.00 for the first months rent; $250.00 for the last months rent; $100.00 damage deposit and $50.00 option to purchase. Purchaser has the option anytime after Aug. 1, 1971 to purchase said dwelling. Seller agrees to credit to the down payment 1/2 of the rent paid for any part of or all of said year depending on how many months rent has been paid. Seller will also credit purchaser all of the $100.00 damage deposit and the $50.00 option money. If, however, there is no purchase of said property seller will return the $100.00 damage deposit providing there is no damage to said property, but the $50.00 option money shall be forfeited. * * * In the event the Garns exercised their option to purchase the dwelling, the agreement stated the sales price to be $31,500 and also set forth the terms of the sale. Said agreement was subsequently extended to April 1973. The option to purchase was never exercised by the Garns, and the agreement terminated in 1973. Highland received payments on the Garn contract totaling $3,000 in 1972 and recorded these receipts on *44 its books and on its Federal income tax return as "rents." For the year 1972, Highland sustained an overall loss of approximately $23,000 which was deducted by the petitioners on their individual return.[4] Respondent, in a statutory notice of deficiency, disallowed the claimed deduction based on his contention that Highland's subchapter S status had terminated because more than 20 percent of its gross receipts for 1972 were from interest and rents. OPINION The sole issue is whether the loss sustained by Highland and deducted by petitioners on their 1972 Federal income tax return should be disallowed. To decide this question, we must determine if Highland's subchapter S status had terminated for 1972 by virtue of section 1372(e)(5). If Highland's election had so terminated, then its loss claimed by petitioners must be disallowed in its entirety. *45 Section 1372(e)(5), with certain exceptions not relevant here, generally provides for the termination of small business corporation status if "for any taxable year * * * such corporation has gross receipts more than 20 percent of which" are rents or interest. Respondent contends that the $3,000 received by Highland in 1972 under the agreement with the Garns concerning the Emerald Valley house constituted "rent" within the meaning of section 1372(e)(5). Petitioners, on the other hand, concede that $1,500 of the $3,000 was rent, but maintain that the balance was earnest money deposits which were subsequently forfeited. In other words, petitioners argue that if the Garns had exercised their option to purchase, then $1,500 of the $3,000 would have had to be applied against the purchase price of the dwelling and therefore that amount was not "rent" as that term is used in section 1372(e)(5). It is undisputed and evident from the parties' stipulation that if we find all of the $3,000 constitutes "rent" within section 1372(e)(5) then, as respondent maintains, Highland's subchapter S status had indeed terminated. In determining whether payments received under leases with options *46 to purchase should be treated as rental payments or as payments toward the purchase of property, the Court of Appeals for the Ninth Circuit in , has stated: the test should not be what the parties call the transaction nor even what they may mistakenly believe to be the name of such transaction. What the parties believe the legal effect of such a transaction to be should [not] be the criterion. If the parties enter into a transaction which they honestly believe to be a lease but which in actuality has all the elements of a contract of sale, it is a contract of sale and not a lease no matter what they call it nor how they treat it on their books. * * * Also see , where we reiterated that the position of this Court is that agreements of the type herein are to be construed according to their substance in deciding the proper tax characterization of the payments received thereunder. Although there are facts which marginally support the position of petitioners, we have concluded for the reasons set forth below, that a sale did not occur at *47 the time the lease was entered into. First, the Garns held merely an option to purchase the Emerald Valley house. There was no assurance that the Garns would exercise their option. In fact, they did not do so. Second, if the lessees chose to exercise their option to purchase, there would have been, a substantial additional payment required over and above the credit from the rental payment. Third, the agreement itself referred to the payments as rent. Fourth, Highland treated the receipts it received under the agreement as rent for financial and tax accounting purposes. Finally, petitioners offered no evidence that the payments did not represent a fair return for the use of the property nor did they offer any credible evidence showing that the payments were viewed by them as anything but rents. [5]
In light of these facts, we find the weight of the evidence simply does not support petitioners' position. Indeed, both the substance of the transaction *48 and the aforementioned manifestation of the apparent intent of the parties to such transaction so indicate. Accordingly, we hold that the $3,000 received by Highland in 1972 constitutes "rent" as that term is used in section 1372(e)(5). Highland's subchapter S status had therefore terminated and petitioners' claimed deduction attributable to Highland's loss should be disallowed. Due to concessions, Decision will be entered under Rule 155. Footnotes
1. The asserted deficiency for 1971 has been resolved by the parties. ↩
2. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. B & L Corporation was also owned by petitioners.↩
4. The parties' stipulation shows that Highland sustained an overall loss in 1972 of $23,002. We believe the discrepancy between this amount and the amount shown on petitioners' and Highland's 1972 returns to be due to a typographical error on the parties' part. Both Highland's and petitioners' returns show the loss to be $23,352.↩
5. At trial petitioner testified that he did not consider $1,500 of the $3,000 received by Highland as rent. After viewing his credibility and demeanor, we cannot accept his testimony as evidence of the transaction's substance.↩